## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------------------------x
                                             )
ALEXEY LEONIDOVICH FISUN,                    )
       Via per Binda, 46                     )
       28838, Stresa VB, Italy               )
                                             )
                                             )
                   Plaintiff,                )
                                             )          Case No. 23-cv-3261
                                             )
            v.                               )
                                             )
ANTONY J. BLINKEN                            )          COMPLAINT FOR
       In his official capacity as           )          DECLARATORY AND
       Secretary of the United States        )          INJUNCTIVE RELIEF
       Department of State                   )
       2201 C St., NW                        )
       Washington, D.C. 20520                )
                                             )
       and                                   )
                                             )
THE UNITED STATES DEPARTMENT                 )
OF STATE                                     )
       2201 C Street, NW                     )
        Washington, D.C. 20520               )
                                             )
JIM MULLINAX                                 )
       In his official capacity as           )
       Director of the                       )
       United States Department of State     )
       Bureau of Economic and Business Affairs )
       Office of Economic Sanctions Policy   )
       & Implementation                      )
       2201 C St., NW                        )
       Suite #4657                           )
       Washington, D.C. 20037                )
                                             )
       and                                   )
                                             )
THE UNITED STATES DEPARTMENT                 )
OF STATE, OFFICE OF ECONOMIC                 )
SANCTIONS POLICY AND                         )
IMPLEMENTATION                               )
       2201 C St., NW                        )
       Suite #4657                           )
```

1

Washington, D.C. 20037        )
        )
and        )
        )

**JANET YELLEN**        )
      **In her official capacity as**    )
      **Secretary of the United States**   )
      **Department of the Treasury**   )
      1500 Pennsylvania Ave., NW  )
      Washington, D.C. 20220    )
        )
and        )
        )

**THE UNITED STATES DEPATMENT OF** )
**THE TREASURY**        )
      1500 Pennsylvania Ave., NW  )
      Washington, D.C. 20220    )
        )
and        )
        )

**BRADLEY T. SMITH**      )
      **In his official capacity as**    )
      **Director of the United States**   )
      **Department of the Treasury**   )
      **Office of Foreign Assets Control**  )
      1500 Pennsylvania Avenue, NW )
      Freedman's Bank Building    )
      Washington, D.C. 20220    )
        )
and        )
        )

**THE UNITED STATES DEPARTMENT** )
**OF THE TREASURY, OFFICE OF**   )
**FOREIGN ASSETS CONTROL**    )
      1500 Pennsylvania Avenue, NW )
      Freedman's Bank Building    )
      Washington, D.C. 20220    )
        )
        *Defendants.*    )
        )
--------------------------------------------------------------x

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Alexey Leonidovich Fisun (a.k.a. Aleksey Leonidovich Fisun or Aleksei Leonidovich Fisun) (herein referred to as "Mr. Fisun") brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of State, its Secretary, Antony J. Blinken, the United States Department of State's Office of Economic Sanctions Policy & Implementation, and Jim Mullinax, its Director of the Office of Economic Sanctions Policy & Implementation, along with the United States Department of the Treasury, its Secretary, Janet Yellen, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and its Director, Bradley T. Smith (collectively, the "Defendants") and in support of his complaint alleges:

## INTRODUCTION

1.      This lawsuit arises from the Defendants' arbitrary and capricious designation of Plaintiff Alexey Leonidovich Fisun as a Specially Designated National ("SDN") and Defendants' continued failure to adjudicate Mr. Fisun's request to rescind his designation as an SDN and remove his name from the Specially Designated Nationals and Blocked Persons List (the "SDN List").  Mr. Fisun was sanctioned as part of the U.S. government's campaign to deter Russian aggression solely because he served as an unpaid member of the Audit and Compensation Committees of the Board of Directors of a private Russian bank and despite the fact that he has never had any connection to the Russian government, economy, military, or foreign policy.  Upon being individually sanctioned, he promptly resigned from his position with the bank and sought to be delisted through the authorized administrative process.

2.      Yet, for over a year, Mr. Fisun's application has been pending with the Department of State, an agency without legal authority to adjudicate his claims and without any articulated

process for doing so.  The application has not been acted upon and the Defendants have provided

no indication as to when a decision might be rendered.  In the meantime, OFAC has delisted

numerous similarly situated individuals whose circumstances are materially indistinguishable

from Mr. Fisun's.

      3.     A cursory analysis of the uncontested facts shows the lack of justification for Mr.

Fisun's designation.  Mr. Fisun currently has virtually no connection to Russia.  He was born in

1965, in Kazakhstan, in the former Soviet Union.  He is a dual citizen of Italy and Russia.  Since

2008, he has held an Italian residence permit and since 2018, he has been living in Italy, where he

runs a local real estate development business.  Since 2020, his personal and professional life have

been exclusively in Italy.  He has not visited Russia since February 2020, operates no businesses

in Russia, and maintains almost no ties to Russia.  He has never held a position with the Russian

government and has never contributed to Russian government policy, not financially or politically,

not in Ukraine or anywhere else.

      4.     He has never met Vladimir Putin.  He has never been characterized as an "oligarch"

and was not among the 210 individuals included in the Department of the Treasury's 2018 "Report

to Congress Regarding Senior Political Figures and Oligarchs in the Russian Federation."  He has

never been a billionaire.  He has never owned a yacht, palace, or expensive artwork, and has never

maintained the kind of ostentatious lifestyle often associated with Russian "oligarchs."  He has

never been charged with a crime, investigated for a crime, or been sued civilly.

      5.     The sole basis for Mr. Fisun's designation is his former, unpaid position, between

 2014 and April 2022, as a member of the Supervisory Board of Sovcombank, a large private

Russian bank.  In this capacity, he served on the Audit and Compensation Committees, where he

was responsible for ensuring the effectiveness of internal controls and the accuracy of financial

reporting.  He had no role in the management or high-level strategic decisions of Sovcombank. Although he owned shares in Sovcombank, he sold those shares prior to being individually sanctioned.

6.      On February 24, 2022, the day of Russia's invasion of Ukraine, OFAC sanctioned several Russian financial institutions including Sovcombank "for operating or having operated in the financial services sector of the Russian Federation economy."  Although OFAC stated that the Russian government views Sovcombank "as a systematically important Russian financial institution" there was no allegation, and there has never been any public allegation by the U.S. government, that Sovcombank has ever supported Russian government policy in Ukraine, or anywhere else, or that it has engaged in corruption.

7.      On March 24, 2022, OFAC published an announcement on its website stating that Mr. Fisun and 16 other individuals had been sanctioned, each "for being or having been a leader, official, senior executive officer, or member of the board of directors of PJSC Sovcombank."  The announcement contained no specific information about any of those designated and did not include any further information about Mr. Fisun or any allegation of wrongdoing by him.  The Department of State simultaneously published a Fact Sheet called "Targeting Elites of the Russian Federation," which repeated the information provided in the OFAC announcement. After learning of these announcements approximately two weeks later, Mr. Fisun immediately resigned his position with Sovcombank and severed all remaining ties with Sovcombank, on April 8, 2022.

8.      Over two months after the announcements and after Mr. Fisun had already resigned, on May 25, 2022, the Department of State published in the Federal  Register a "Notice of Department of State Sanctions Actions" stating that the Secretary of State had imposed sanctions on Mr. Fisun and others who "are or have been leaders, officials, senior executive officers, or

members of the board of directors of entities whose property and interests in property are blocked pursuant to E.O. 14024."

9.      On September 26, 2022, Mr. Fisun filed an application with OFAC for recission of his designation, explaining why rescission is warranted and the impact of the sanctions on him and his family.  The application attached substantial supporting documentation including an affidavit from Mr. Fisun, his letter of resignation sent to Sovcombank, an announcement by Sovcombank officially removing him from the Supervisory Board, a notification from Sovcombank confirming his removal from the Supervisory Board, and a cover letter from counsel explaining the legal basis for delisting.  The application also requested a meeting with OFAC to discuss the issues raised by the petition.

10.      Upon receipt of the application, OFAC informed counsel that "This designation was done under a Department of State authority. Sanctions_inbox@state.gov will serve as the point of contact for the petitioner during the reconsideration process."  On October 3, 2022, the Department of State also acknowledged receipt and stated that "the appropriate Department of State officials are reviewing your client's petition.  Please note that this process may involve a lengthy review.  The U.S. Department of State will follow up with you should we have more questions."

11.      The Department of State has sent Mr. Fisun two detailed questionnaires, dated February 28, 2023 and August 10, 2023, which Mr. Fisun answered within the periods of time required by the questionnaires.  Apart from these sporadic requests for information, neither OFAC nor the Department of State has actively engaged with Mr. Fisun.  Neither agency has acknowledged repeated requests for a meeting.

12.     In response to an email on September 21, 2023 asking for an update on the status of the case, the Department of State responded that it is "working diligently to reach a decision" but is "not in a position to provide a time estimate for the completion of our review."  When asked for status again on October 11, 2023, the Department of State reiterated the same answer.  In addition, despite his request, Mr. Fisun has yet to receive a copy of the administrative record in this case from either OFAC or the Department of State.

13.     Thus, more than 19 months after he was designated for sanctions and more than 13 months after he petitioned for rescission, Mr. Fisun's case has not been resolved.  Mr. Fisun continues to suffer from the sanctions.  His business and personal bank accounts have been frozen and he cannot engage in routine transactions, including those on behalf of his family and his business.  This will continue as long as Defendants fail to adjudicate his application.

14.     Since Mr. Fisun filed his delisting application, several other similarly situated individuals have had the sanctions against them rescinded.  Like Mr. Fisun, all of these individuals were sanctioned because of positions they held at Russian banks and, like Mr. Fisun, all resigned these positions.   These include: Joel Lautier, who, like Mr. Fisun, was designated because of position he held at Sovcombank; Andrey Golikov, who, like Mr. Fisun, previously served on the Audit Committee of a private bank, Bank Otkritie; Anatoly Karachinsky, Elena Titova and Paul Goldfinch, all of whom were previously outside directors of Bank Otkritie; and Natalya Alymova, who was previously a member of the Executive Board of Sberbank.  All of these individuals had their applications adjudicated in less time than Mr. Fisun's application has been pending.  Despite these precedents, Mr. Fisun inexplicably remains on the SDN List.

## MR. FISUN'S CLAIMS

15.     Mr. Fisun asserts three claims.  First, Mr. Fisun's designation and continued inclusion on the SDN List is arbitrary and capricious because it has no logical connection to the stated purpose of the sanctions.  Second, the Defendants' failure to issue a decision on Mr. Fisun's application is arbitrary and capricious because it constitutes unreasonable delay and shows that similarly situated applicants are being treated differently.  Third, the Department of State does not have the authority to adjudicate Mr. Fisun's claim and the delegation of his application to the Department of State is a violation of the Administrative Procedure Act ("APA").

## JURISDICTION AND VENUE

16.     This action arises under the U.S. Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 555 and 701 *et seq.*  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

17.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57.  This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

18.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the Complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§1391(b) and (e).

## THE PARTIES

19.     The Plaintiff in this case is Alexey Fisun.  Paragraphs 3 through 14 describing his background are re-alleged and incorporated by reference as if fully set forth herein.

20.      Defendant, the U.S. Department of State, is a cabinet-level governmental department, led by the Secretary of State, that manages the United States' relationships with foreign governments, international organizations, and other countries.  It is located at 2201 C St., NW, Washington, D.C. 20520.

21.      Defendant Antony J. Blinken, is the Secretary of the U.S. Department of State. Secretary Blinken is sued in his official capacity.

22.      Defendant, the Bureau of Economic and Business Affairs, Office of Economic Sanctions Policy & Implementation, is a federal agency that is part of the U.S. Department of State.  It is located at 2201 C St., NW, Suite 4657, Washington, D.C. 20520.

23.      Defendant Jim Mullinax is the Director of the Office of Economic Sanctions Policy & Implementation.  In this role, Director Mullinax is responsible for overseeing and directing the operations of the Office of Economic Sanctions Policy & Implementation, which has no lawful authority to adjudicate this matter and yet is unreasonably delaying adjudication of Mr. Fisun's delisting petition.  Director Mullinax is sued in his official capacity.

24.      Defendant, the U.S. Department of the Treasury, is a cabinet-level governmental department, led by the Secretary of the Treasury.  In addition to its core objective of promoting economic prosperity and ensuring the financial security of the United States, it implements and administers economic sanctions against foreign threats to the United States.  It is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.

25.      Defendant Janet Yellen is the Secretary of the Treasury of the United States. Secretary Yellen is sued in her official capacity.

26.       Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW-Annex, Washington D.C. 20220. OFAC

is lawfully responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 14024.  Further, under 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively, it is the sole administrative agency responsible for the reconsideration and delisting process.

27.   Defendant Bradley T. Smith is the Director of OFAC.  Director Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A.   Mr. Fisun's Designation is Arbitrary and Capricious

28.   The International Emergency Economic Powers Act ("IEEPA") endows the President of the United States with certain powers to deal with an unusual and extraordinary threat to national security upon declaration of a national emergency.  50 U.S.C. § 1701.  These powers include the power to impose economic sanctions on foreign entities and individuals.  *See* 50 U.S.C. §§ 1702 – 1703.  On April 15, 2021, President Biden issued E.O. 14024 which authorized the imposition of discretionary sanctions on various sectors of the Russian economy, and also granted the Secretary of the Treasury, in consultation with the Secretary of State, and the Secretary of State, in consultation with the Secretary of the Treasury, the power to designate persons determined to meet certain criteria.  E.O. 14024 also authorizes the Secretary of the Treasury to determine additional sectors of the Russian economy to be subjected to the imposition of discretionary sanctions.  E.O. 14024 § l(a).  Pursuant to this authority, OFAC, as a division of the Department of the Treasury, has designated certain persons who operate or have operated in the financial services sector of the Russian economy.

29.     The intent behind the sanctions was made clear upon issuance.  In E.O. 14024, President Biden declared a national emergency to address the following "Specified Harmful Foreign Activities of the Government of the Russian Federation":

1.     undermining the conduct of free and fair democratic elections and democratic institutions in the United States and its allies and partners;

2.     engaging in and facilitating malicious cyber-enabled activities against the United States and its allies and partners;

3.     fostering and using transnational corruption to influence foreign governments;

4.     pursuing extraterritorial activities targeting dissidents or journalists;

5.     undermining security in countries and regions important to United States national security; and

6.     violating well-established principles of international law, including respect for the territorial integrity of states.

30.     In his 2022 State of the Union address, President Biden explained that the sanctions were part of a broader U.S. policy of "inflicting pain on Russia and supporting the people of Ukraine … cutting off Russia's largest banks from the international financial system [and] choking off Russia's access to technology that will sap its economic strength and weaken its military for years to come."

31.     Although a Court's scope of review under the arbitrary and capricious standard is deferential, an agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.  As the Department of the Treasury 2021 Sanctions Review stated, "[s]anctions should incorporate rigorous economic analysis, technical expertise, and intelligence to ensure that they are the right tool in our national security arsenal to pursue the identified objective."  The same report also stated

that "[s]anctions should be designed to tailor their impact so that costs fall on intended targets and that potential negative impact on others is minimized."

32.     The sanctions on Mr. Fisun are clearly not narrowly tailored to "ensure that they are the right tool" and that the "costs fall on intended targets."  The Defendants have not made any allegation, or presented any evidence, that Mr. Fisun engaged in any of the harmful activities specified by E.O. 14024.  Nor have they offered any explanation as to why they believe that sanctioning him simply for being an unpaid member of the Audit and Compensation Committees of a private bank that the U.S. government has never publicly accused of any wrongdoing, would help the U.S. government to address a national security emergency or "chok[e] off Russia's access to technology … sap its economic strength and weaken its military for years to come."  Absent any rational connection between Mr. Fisun's designation and the articulated underlying policy goals of the Russia sanctions, Mr. Fisun's designation is arbitrary and capricious.

**B.     The Failure to Rescind the Sanctions on Mr. Fisun is Arbitrary and Capricious**

33.     According to OFAC, "[t]he ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior."  To this end, OFAC has explained that rescission of sanctions may be warranted when there has been "a positive change in behavior…" or when "the basis of designation no longer exists…"

34.     OFAC has applied this principle repeatedly to individuals, like Mr. Fisun, who (a) have been sanctioned solely because of their affiliation with a Russian bank and (b) have resigned from that position.  These now delisted individuals include the following:

> a.  Joel Lautier, designated, together with Mr. Fisun, on March 24, 2022 based on his affiliation with Sovcombank and delisted on May 19, 2023. Mr. Lautier was on the SDN list for 422 days;

b.   Anatoly Karachinsky, designated on April 20, 2022 for affiliation with Bank Otkritie, and delisted on May 19, 2023.  Mr. Karachinsky was on the SDN List for 395 days and his delisting application was pending for all 395 of those days;

c.   Andrey Golikov, designated on April 20, 2022 for affiliation with Bank Otkritie, and delisted on July 20, 2023.  Mr. Golikov was on the SDN list for 457 days and his delisting application was pending for 424 of those days;

d.   Elena Titova, designated on April 20, 2022 for affiliation with Bank Otkritie, and delisted on July 20, 2023.  Ms. Titova was on the SDN List for 457 days and her delisting application was pending for 424 of those days;

e.   Paul Goldfinch, designated on April 20, 2022 for affiliation with Bank Otkritie, and delisted on September 14, 2023.  Mr. Goldfinch was on the SDN List for 513 days and his delisting application was pending for 498 of those days;

f.   Natalya Alymova, designated on May 8, 2022, as a "current [or] recent member[] of the Executive Board of Sberbank" and delisted on September 14, 2023.  Ms. Alymova was on the SDN List for 495 days.

All of these individuals were delisted in fewer than the 588 days that Mr. Fisun has now spent on the SDN List.  Mr. Fisun's delisting application has been pending for 402 days – Mr. Karachinsky's application was resolved within less time (395 days) and Ms. Titova's and Mr. Golikov's applications were resolved within a comparable time (424 days).

35.   Defendants have not articulated any reason as to why Mr. Fisun's case should be treated differently, and none is apparent from the facts.  He resigned from his position at Sovcombank over 19 months ago.  He divested his shares in Sovcombank before he was even

designated for sanctions.  He has not set foot in Russia since 2020 and, before he left Russia, was not politically active in any way.

36.     The sanctions have had a devastating effect on Mr. Fisun, his family, and his business.  His business and personal bank accounts have been closed, preventing him from engaging in ordinary banking transactions.  For example, Mr. Fisun has been unable to send money to his daughter in the United Kingdom to help her support her young child or to send birthday gifts to his nephews in Germany, as he routinely did before he was sanctioned.  Furthermore, Mr. Fisun's business partners have viewed him with suspicion and are considering terminating their dealings with him and his real estate development company.

37.     Mr. Fisun presented all of these facts when he filed for delisting over one year ago and has reiterated, and elaborated on, them in responses to two post-submission questionnaires sent to him by the Department of State.  Yet his application remains unadjudicated.

**C.      The Department of State Lacks Authority to Adjudicate Mr. Fisun's Petition**

38.     Mr. Fisun's application was improperly delegated by OFAC to another, separate government body outside of the Department of the Treasury – the Department of State.  Nowhere in the law – be it statutory, regulatory, or administrative – is the Secretary of State or the Department of State authorized to adjudicate a delisting petition for removal from the SDN List. As discussed below, the rules governing the process for administrative reconsideration exclusively identify OFAC, which is part of the Department of the Treasury, as the sole administrative body that adjudicates such petitions.  Further, there is no delegation authority granted by the President as part of the sanctions program issued under E.O. 14024 for the Secretary of the Treasury to redelegate her functions outside of Treasury.  Section 8 of E.O. 14024 authorizes the Secretary of the Treasury to take such actions, including the promulgation of rules and regulations, and to

employ all powers granted to the President by IEEPA, as may be necessary to carry out the purposes of this order.   The Secretary of the Treasury may, consistent with applicable law, redelegate any of these functions within the Department of the Treasury.   In the Russian Harmful Foreign Activities Sanctions Regulations, 31 C.F.R. § 587.802 provides an express delegation to the Director of OFAC of all authority granted to the Secretary of the Treasury pursuant to E.O. 14024.  E.O. 14024 does not provide this Section 8 authority to the Secretary of State, nor has the Department of State published any regulations authorizing the Secretary of State to redelegate any of his E.O. 14024 authorities within the Department of State (e.g. Bureau of Economic and Business Affairs, Office of Economic Sanctions Policy & Implementation).  Since the operative laws and regulations specify the government actors who are empowered to conduct certain actions, there is no implied delegation to the Secretary of State or the Department of State to adjudicate petitions for administrative reconsideration.

39.     The process for seeking delisting is set forth in 31 C.F.R. § 501.807(a), which states that "submission must be made in writing and addressed to the Director, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW.  – Annex, Washington, DC 20220."  The regulation makes no mention of any other federal agency, including the Department of State, nor does it grant OFAC the right to delegate its authority over delistings to any other body.  Thus, OFAC is the only government agency authorized to adjudicate delistings.

40.     While OFAC provides guidance regarding the procedures and guidelines governing delisting applications, the Department of State, consistent with its lack of statutory authority, does not offer any meaningful instruction.   Moreover, persons similarly situated to Mr. Fisun (previously identified in paragraph 34) were delisted by OFAC, not by the Department of State.

## LEGAL CLAIMS

### COUNT I

### MR. FISUN'S DESIGNATION IS ARBITRARY AND CAPRICIOUS AS IT HAS NO RATIONAL CONNECTION TO U.S. FOREIGN POLICY GOALS
**(against all Defendants)**

41.     Mr. Fisun re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

42.     Although decisions of administrative agencies are entitled to deference, this deference has limits. The APA directs the courts to set aside any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2). Although the scope of review under the arbitrary and capricious standard is narrow, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.  An agency action is arbitrary and capricious if it has relied on factors which the agency was not intended to consider, entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency.

43.     Neither OFAC, nor the Department of State, has ever proffered any rational connection between the national security emergency created by Russia's invasion of Ukraine and the designation of Mr. Fisun, an Italian citizen who previously served without compensation on the Audit Committee and Compensation Committee of a private Russian bank, who has never held a government position in Russia and who has never contributed to Russia's military actions in Ukraine, or to its foreign policy anywhere in the world, in any way.  Nor can any rational connection be discerned based on the undisputed facts.

**COUNT II**

**DEFENDANTS' FAILURE TO RESCIND THE SANCTIONS ON MR. FISUN IS
ARBITRARY AND CAPRICIOUS BECAUSE SIMILARLY SITUATED PARTIES ARE
NOT BEING TREATED SIMILARLY
(against all Defendants)**

44.    Mr. Fisun re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

45.    The APA requires that an agency must "conclude a matter presented to it…[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).  Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 706(1) and 5 U.S.C. § 551(13).  A court reviewing an agency's actions is required to compel actions unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

46.    OFAC and the Department of State have been provided with indisputable evidence that Mr. Fisun resigned from Sovcombank in April 2022, shortly after being sanctioned, but have failed to rescind the sanctions for an extended time period – longer than one year.

47.    Administrative agencies must treat similarly situated parties similarly or provide a reasoned explanation for departing from precedent.  According to OFAC, "[t]he ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior."  To this end, OFAC has explained that rescission of sanctions may be warranted when there has been "a positive change in behavior…" or when "the basis of designation no longer exists…"

48.    While failing to rescind sanctions on Mr. Fisun, OFAC has applied this principle to at least six other individuals, who, like Mr. Fisun, were sanctioned solely because of their affiliation with a Russian bank and who have resigned from those positions.  Despite diligently pursuing his claim and consistently following up with Defendants as to the status of his case, Mr.

17

Fisun has spent more time on the SDN List than any of these individuals and his application has been pending for a comparable length of time.

49.     The Defendants' failure to rescind the sanctions on Mr. Fisun is arbitrary and capricious and the failure to adjudicate his application in a commensurate time is an unreasonable delay.

## COUNT III

### THE DELEGATION OF PLAINTIFF'S APPLICATION TO THE DEPARTMENT OF STATE VIOLATES THE ADMINISTRATIVE PROCEDURE ACT
### (against all Defendants)

50.     Mr. Fisun re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

51.     The APA directs courts to hold unlawful and set aside any agency action that is "… (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2).

52.     Here, OFAC is the agency that is tasked with adjudication of delisting applications pursuant to  31 C.F.R. § 501.807.  There is no regulatory or statutory authority that allows the delegation of this duty to any other government agency.

53.     Nevertheless, OFAC has improperly delegated its authority to the Department of State.  Based on correspondence sent by OFAC to Mr. Fisun, OFAC has stated that the designation was done under a Department of State authority, that the Department of State is reviewing the application, that the Department of State will serve as the point of contact during the reconsideration process, and that the Department of State will follow up with questions. OFAC has apparently not taken any actions with respect to this application apart from sending acknowledgment of receipt and deferring to the Department of State.

54.     The Department of State has improperly accepted the authority to adjudicate this application.  It has sent two questionnaires to Mr. Fisun and explicitly stated that it is working diligently to reach a decision. The Department of State has no statutory authority to adjudicate delisting petitions and has not even provided meaningful guidance on the process of adjudication or the criteria it would use to adjudicate these applications, leaving applicants in the dark as to how to pursue their claims.

55.     Accordingly, the assignment of Mr. Fisun's application to the Department of State for adjudication is an *ad hoc* departure from the procedures required by law.

### RELIEF REQUESTED

Wherefore, Plaintiff respectfully Requests that this Court:

A.  Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and removal of his name from OFAC's SDN List;

B.  Order Defendants to issue a written, reasoned decision on Plaintiff's pending delisting petition and/or provide a legitimate reason why his petition has been treated differently than those of similarly situated individuals;

C.  Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and any other applicable provision of law; and

D.  Such other and further relief as the Court may deem proper.

Dated: November 1, 2023

Respectfully submitted,

*/s/Mitchell R. Berger*_____
Mitchell R. Berger* (D.C. Bar No. 385467)
Thomas A. Firestone** (D.C. Bar No. 500468)

**Squire Patton Boggs (US) LLP**
2550 M Street NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
mitchell.berger@squirepb.com
thomas.firestone@squirepb.com

*Counsel for Plaintiff Alexey Leonidovich Fisun*

\* *LEAD ATTORNEY TO BE NOTICED*
\*\**pro hac vice forthcoming*